Alla Kachan, Esq.
Law Offices of Alla Kachan, P.C.
2799 Coney Island Avenue, Suite 202
Brooklyn, NY 11235
Tel.: (718) 513-3145

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
In re:

                                      Case No: 21-11531- dsj

Sumak Kawsay LLC,                        Chapter 11

                        Debtor.
----------------------------------------------------------X
Sumak Kawsay LLC,

                Plaintiff,           Adv. Proc. No. 1-21-

      -against-

OSK IX, LLC,

                Defendant
----------------------------------------------------------X

## COMPLAINT TO AVOID A PREFERENTIAL TRANSFER
## PURSUANT TO 11 U.C.S. 547

Sumak Kawsay LLC, the Plaintiff herein, by and through its undersigned counsel, Alla Kachan, Esq., filed its Complaint to avoid a preferential transfer pursuant to 11 U.C.S. 547 ("Complaint") against the OSK IX, LLC, the Defendant, and alleges as follows:

### JURISDICTION AND VENUE

1. This court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C §§ 1408 and 1409.

3. This adversary proceeding, brought pursuant to, inter alia, 11 U.S.C. §§ 547 and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), arises from and is related to this chapter 11 case.

## BACKGROUND

4. On August 30, 2021 (the "Petition Date"), Sumak Kawsay LLC (the "Debtor" and/or the "Plaintiff") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Southern District of New York, Case No: 21-11531- dsj.

5. Prior the Petition Date, on August 23, 2021, OSK IX, LLC, seized the Plaintiff's medallion #1T37, Rate Card #1T37, Plate #2-Y201678C and Taxi Meter 1T37. The Notice of seizure is attached herein as an Exhibit A.

## RELIEF REQUESTED HEREIN

6. Pursuant to 11 U.S.C. 547, the Plaintiff respectfully seeks an order of the Court, avoiding the preferential transfer of medallion #1T37 seized by the OSK IX, LLC 7 days prior to the filing of the petition, and returning the medallion to the Debtor/ Plaintiff.

7. The medallion is necessary and essential for an effective reorganization and effect on the Debtor's ability to operate, make timely cash collateral payments to the secured creditor and further will allow the Debtors to fund a feasible plan of reorganization. Moreover, it will allow the Debtor to continue the operations of his sole business as a taxi corporation as the medallion is the Debtor's sole source of income. Additionally, absent the return of the medallion, the Debtor will be prejudiced as to the participation in current programs being finalized between the City of NY and various medallion Lenders.

## BASIS FOR RELIEF

8. Under Paragraph § 547(b) of the Bankruptcy Code, a Trustee or Debtor in possession can avoid the transfer of "any interest of the debtor in property" made:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made . . . on or within the 90 days before the date of the filing of the petition . . . and
(5) that enables such creditor to receive more than such creditor would receive if
    A. the case was a case under Chapter 7 of this title;
    B. the transfer had not been made; and
    C. such creditor received payment of such debt to the extent provided by the provisions of this title.

*11 U.S.C. 547; see Rave Communications, Inc. v. The Ink Spot, 128 B.R. 369, 371 (Bankr. S.D.N.Y. 1991).*

9. The trustee or the Debtor in possession, exercising the powers of a trustee, bears the burden of proof on each element of a preference. Once the trustee or the Debtor in possession has met his burden, the defendant bears the burden of proving affirmative defenses set forth in Bankruptcy Code section 547(c). Affirmative defenses include contemporaneous exchange for new value, ordinary course of business, purchase of money security interests, and subsequent new value.

10. *Transfers of the Debtor's Property*

Section 547 of the Bankruptcy Code was designed to permit the recovery of property of a debtor's estate that, but for the transfers, would have been available for distribution to creditors. *See Begier v. IRS, 496 U.S. 53 (1990); Cassirer v. Herskowitz (In re Schick), 234 B.R. 337, 342 (Bankr. S.D.N.Y. 1999).* Property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *11 U.S.C. § 7 541(a).*

In the instant case, on August 23, 2021, the prior the Petition Date, OSK IX, LLC, seized the Debtor's medallion #1T37, Rate Card #1T37, Plate #2-Y201678C and Taxi Meter 1T3. The Notice of seizure is attached herein as an Exhibit A. Upon information and belief, the medallion has not been sold, and is currently in possession of OSK IX, LLC. It is not disputed that said Medallion constitutes property of the Debtor's estate. Consequently, the Debtor has met its burden of proof, with respect to this element.

11. *Transfers for the Benefit of a Creditor on Account of an Antecedent Debt*

A "creditor" is defined in section 101(10) of the Bankruptcy Code as, *inter alia*, as an entity that has a claim against the debtor that arose at the time of, or prior to, the order for relief concerning the debtor. 11 U.S.C. 101(10). A "claim" is defined under the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). A debt is considered "antecedent" for purposes of section 547 of the Bankruptcy Code if it was incurred prior to the alleged transfer. *See, e.g., Pereira v. Lehigh Sav. Bank, SLA (In re Artha Mgmt.), 174 B.R. 671, 678 (Bankr. S.D.N.Y. 1994); Nisselson*

*v. Salim (In re Big Apple Volkswagen, LLC), Adv. Proc. No. 11-02251 (JLG), 2016 WL 1069303, at \*10 (Bankr. S.D.N.Y. March 17, 2016).*

Prior the Bankruptcy filing, the Debtor entered into the Loan Agreement with Signature Financial LLC. Hereinafter, Signature Financial LLC assigned this loan to OSK VIII, LLC, and further, OSK VIII, LLC transferred and assigned this loan to OSK IX, LLC. Furthermore, the Debtor has listed OSK IX, LLC in Schedule D of its' Petition. Consequently, the Debtor met its burden of proof, with respect to this element.

12.     *The Transfers Were Made within the Ninety Days of the Petition Date*

The Debtor's medallion #1T37, Rate Card #1T37, Plate #2-Y201678C and Taxi Meter 1T37 were seized on August 23, 2021, 7 days prior the Bankruptcy filing. Consequently, thus the Debtor has met its burden of proof, with respect to this element.

13.     *The Transfers Enabled the Defendant to Receive More Than He Would Have Received Pursuant to a Distribution Under Chapter 7.*

The liquidation element of the preference analysis, which is contained in section 547(b)(5), is sometimes referred to as the "greater amount test." Transfer is preferential if it enabled a creditor to receive a greater percentage of his claim than he would have received if the transfer had not occurred and he had participated in the distribution. *See H.R. Rep. No. 95-595 at 177; Barash v. Public Financial Corp., 658 F.2d 504 (7th Cir. 1981).*

The repossession of the medallion in the instant case, has enabled the creditor to receive the full value of the medallion, irrespective of any other claims of the bankruptcy estate. While a chapter 7 liquidation, would incur significant Chapter 7 administration costs, including but not limited to: Chapter 7 trustee commissions, and legal fees, thus the distribution to the creditors, upon the sale of the medallion, would be substantially less than receiving the full benefit of the medallion resale value upon repossession. Notwithstanding OSK's contention that a trustee cannot assert fees and commissions against a secured claim, and referenced In re Hanson Restaurants, Inc., 155 B.R. 758, 762 (Bankr. D. Minn. 1993). As a threshold matter, the Hanson decision clearly hinges on the finding that the that the Creditor in question

was undersecured. As evidenced by the attached broker opinion letters, it is apparent, that whether the lender seeks to finance a sale of the repossessed medallion to a third party, or whether the Debtor participates in the city program, which is premised on a finance structure, the finance valuation applies. The finance valuation, as referenced herein, is significantly higher than the amount of the unsecured claim of OSK in the instant case. The broker opinion letters are attached herein as Exhibit B.

In light of the attached brokerage opinion letters, evidencing that the financed value of the medallion is currently higher that OSK's secured claim amount, and OSK would thus be paid in full on their secured claim, the Chapter 7 trustee can indeed assert his fees and commissions, as well as other administrative expenses, prior to the distribution to unsecured creditors. As a matter of fact, the unsecured portion of OSK's claim as well as the claims of other unsecured creditors of the Debtor, would receive a distribution only after the trustee has received compensation and reimbursement of his fees, commissions, and administrative expenses. (See In re Hanson Restaurants, Inc.,)

Chapter 7 allows a trustee to liquidate a debtor's non-exempt assets to raise money to pay off creditors. Consequently, the primary role of a chapter 7 trustee in an asset case is to liquidate the debtor's nonexempt assets in a manner that maximizes the return to the debtor's unsecured creditors. Further, the trustee may also attempt to recover money or property under the trustee's "avoiding powers." The trustee's avoiding powers include the power to: set aside preferential transfers made to creditors within 90 days before the petition; undo security interests and other prepetition transfers of property that were not properly perfected under non-bankruptcy law at the time of the petition; and pursue non-bankruptcy claims such as fraudulent conveyance and bulk transfer remedies available under state law.

In an "Asset" case where the Debtor's asset is fully encumbered, Chapter 7 Trustee may seek to justify his liquidating the collateral through a negotiated "carve-out" agreement with the secured creditor. By the "carve-out" agreement, the secured creditor can agree to have some portion of its lien proceeds be paid to others. However, there has to be funds making their way down to unsecured creditors. As was

noted by Ninth Circuit Bankruptcy Appellate Panel there must be a meaningful distribution to creditors and by that to unsecured creditors. *In re KVN Corp., 514 B.R. 1 (BAP 9th Cir. 2014)*.

In the instant case, the only asset of the Plaintiff, is the Taxi medallion #1T37 seized by the OSK IX, LLC. It is a Plaintiff's position that this asset is not fully encumbered. As to the proof of claim filed by OSK, the secured portion of its' claim is $160,000.00 and according to three attached Broker's Opinion letter dated February 17, 2022, a value of the medallion, in a situation where the medallion is financed, is $180,000-$200,000. Consequently, in the hypothetical event where a medallion is sold by the Chapter 7 Trustee, there would be a funds available to distribution to unsecured creditors, thus it appears that the medallion in question is not undersecured, and there is indeed equity in the asset. It must be noted that OSK IX, LLC is not the only Creditor of the estate, and the remaining unsecured Creditors would then be entitled to receive a pro-rated distribution.

With respect to the Chapter 7 Trustee's fees and commissions, the Plaintiff respectfully alleges, that the Chapter 7 trustee requests compensation in the form of a "commission" under § 330(a)(7). The requested fees are most times, but not always, the maximum allowed under § 326(a) based upon the amounts to be distributed by the trustee to creditors in the case.

In cases, where a Chapter 7 Trustee liquated taxi medallions during the administrating of a Chapter 7 case, commissions and compensation of the Chapter 7 Trustee and related professionals were paid to the Chapter 7 Trustee, to the Counsel for the Chapter 7 Trustee, to the Accountant to the Trustee and to Auctioneer. An Order approving commissions and final compensation of the Chapter 7 Trustee and related professionasl of Brownie Taxi LLC, et al. (case 17-45732-cec), Hypnotic Taxi LLC, et al (15-43300-cec), Wolverine Taxi LLC, et al., (17-45660-cec) and R Shimon Bar Yokhai Cab Corp (19-75324-reg) are attached herein as Exhibit C. In summary, the trustee was awarded $10,000-11,500 commissions per estate, counsel to the trustee was awarded $8,000-$16,000 per estate, the auctioneer was awarded $6,000-$10,500 per estate, and the CPA was awarded $1,363.64-$1,818 per estate.

A distinction must be made here, that while in the above referenced cases, a consensual carve out for the trustee's commissions, fees and expenses of professionals was made, this is indeed the industry

practice, and further, the medallion assets in the above cases, were indeed undersecured. As illustrated herein, the Debtor has taken the position that the medallion in question is not undersecured, and thus there is equity in the repossessed asset if it is financed by the lender in a sale, or through the city program, in which case, under the provisions of 11USC 326 (a), the trustee may charge reasonable fees and expenses in the event that there is sufficient available equity in the asset to pay the secured portion in full.

Furthermore, as referenced herein, the practice adopted in the recent years by chapter 7 trustees and medallion lenders, is that in many instances, medallions are sold as a package, whereby a carve out is made for the trustee's fees and expenses, even in scenarios where there is no equity in the medallion assets. Under the instant facts however, the secured claim against an individual medallion is indeed lower than the current market value of a financed medallion.

Moreover, it appears that medallion lenders and hedge funds that hold medallion portfolios, have adopted the practice of specifically financing repossessed medallions, and as per the attached opinion letters, the medallions are being financed at a price of $175,000-200,000. This in turn indicates not only that there is equity in the instant medallion, above the secured claim amount, but that the lenders themselves are specifically financing repossessed medallions at the higher prices.

This in turn is particularly crucial under the instant facts, as it appears, that whether or not in the given cast would OSK gain an advantage of not having to incur any trustee costs and expenses, there is a very strong possibility that they will then possibly seek to finance the sale of the repossessed medallion and will thus ultimately collect the higher financed amount, with interest, over 15-20 years, which amounts to approximately $300,000. In the given scenario, OSK undoubtedly receives a significantly higher recovery in the event of a sale of the repossessed medallion.

Further, as OSK has refused any mediation or settlement efforts, in the event that the honorable court does not see fit to find OSK's actions to be preferential, discovery must be conducted to investigate whether OSK seeks to finance the sale of the instant repossessed medallion, and if OSK particularly has engaged in said practice. In the event that it is found that OSK does indeed seek to finance the sale of the

repossessed medallion, the Debtor has then made an undisputable showing of a preference, as the repossession of the medallion within the transfer period has then indisputably yielded a significantly higher recover for the lender.

Thus, it is the position of the Debtor, that the burden of proof with respect to this element, has been met.

14. *The Contested § 547(b) Element: Solvency*

Under Bankruptcy Code section 547(b)(3), a showing of insolvency at the time of the transfer in question, must be made. The term "insolvent" as applied to a corporation, is defined under section 101(32) of the Bankruptcy Code to mean a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's 11 creditors; and (ii) property that may be exempted from property of the estate under section 522 of [the Bankruptcy Code]." The devaluation of taxi medallions, caused by the proliferation of ride share applications such as Uber and Lift, has resulted in almost uniform insolvency among taxi medallion debtors, as taxi-cab medallions are currently valued at roughly 10-20% of their price at the time that the medallion loans were originated.

## APPLICABILITY OF AVAILABLE AFFIRMATIVE DEFENSES

15. A Trustee or Debtor in possession can avoid the transfer of "any interest of the debtor in property" made based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses. *See 11 U.S.C. 547(c)*

16. *Contemporaneous change for new value.* Said preference defense must address three elements such as parties' intent to make an exchange, the existence of new value, and contemporaneousness of the exchange for new value. *See 11 U.S.C. § 547(c)(1); also see Kendall v. Liquid Sugars Inc., 227 B.R. 530 (N.D. Cal. 1998).* In the instant case, the seizure of the medallion does not constitute a bilateral contract or exchange, and thus lacks contemporaneous nature. *Also see In re Hersman, 20 B.R. 569 (Bankr. N.D.*

*Ohio 1982)*. As to the existence of the new value, the seizure of the medallion does not create any new value. Thus, the above described affirmative defense is inapplicable under the facts herein.

17. *The ordinary course of business.* This exception set forth under 11 U.S.C. § 547(c) consists of the three elements. The Debtor may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the Debtor in the ordinary course of business or financial affairs of the debtor and the transferee:

(A) Made in the ordinary course of business or financial affairs of the Debtor and the transferee;

(B) Made according to ordinary business terms

*See 11 U.S.C. § 547(c)(2); see also Lawson v. Ford Motor Co. (In re Roblin Indus.), 78 F.3d 30, 34 (2d Cir. 1996); 5 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 547.03 (15th ed. 2002).*

The Debtor is a taxi operator and the transferee is a bank, and the seizure of the taxi medallion in the instant case was made neither in the ordinary course of business, nor according to ordinary business terms. Thus, the above described affirmative defense is inapplicable under the facts herein.

18. *Subsequent New Value.* In *Kaye v. Blue Bell Creameries, Inc. (In re BFW Liquidation, LLC)*, 899 F.3d 1178 (11th Cir. 2018), the U.S. Court of Appeals for the Eleventh Circuit broadened the scope of section 547(c)(4) of the Bankruptcy Code's "subsequent new value" defense against preference actions by holding that the provision applies to all new value supplied by the creditor during the preference period and not merely to new value that remains unpaid on the bankruptcy petition date. In adopting this approach, the Eleventh Circuit joined the Fourth, Fifth, Eighth, and Ninth Circuits in applying a more expansive reading of section 547(c)(4). *11 U.S.C. § 547(c)(4); see also Kaye v. Blue Bell Creameries, Inc. (In re BFW Liquidation, LLC), 899 F.3d 1178 (11th Cir. 2018).* In the instant case, the fact of the medallion seizure alone does not create subsequent new value. Furthermore, by their own admission, the creditor herein has taken no actions with regard to the medallion post repossession, which consequently means that no new value was supplied as well. Thus, the above described affirmative defense is inapplicable under the facts herein.

**WHEREFORE**, the Plaintiff prays that the Court enter an order, granting the relief requested herein and granting such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       February 22, 2022

*/s/ Alla Kachan*
    Alla Kachan, Esq.
Law Offices of Alla Kachan, P.C.
2799 Coney Island Avenue, Suite 202
Brooklyn, NY 11235
Tel.: (718) 513-3145